UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/14/2026

MOHAMED ELTAYEB ALI ELTAYEB,

Petitioner,

-against-

KENNETH GENALO, New York Field Office Director, Immigration and Customs Enforcement and Removal Operations (ICE/ERO); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, Department of Homeland Security (DHS); DARRIN MARGOLIN, Director, Executive Office for Immigration Review; and TODD BLANCHE, Acting U.S. Attorney General,

Respondents.

26-CV-6090 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

Petitioner, Mohamed Eltayeb Ali Eltayeb, a citizen of Sudan, has been held in the custody of the Department of Homeland Security ("DHS") for nearly a month. On July 17, 2026, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, Dkt. 1. That Petition is now GRANTED, and the Government is ordered to provide Petitioner a bond hearing at which the Government bears the burden of proof and at which the Immigration Judge must consider alternatives to detention if Petitioner is found, by clear and convincing evidence, to pose a risk of flight or a danger to the community.

**BACKGROUND**

Petitioner entered the United States in December 2024 by crossing the border without inspection. Pet., Dkt. 1 at ¶ 2; Shanahan Decl., Dkt. 8 at ¶ 4. He was given a credible fear interview, during which he expressed his fear of returning to Sudan, having been harmed in the past by Sudan's Rapid Support Forces. Pet., Dkt. 1 at ¶ 27; Shanahan Decl., Dkt. 8 at ¶¶ 8–9.

Following a finding that he had demonstrated a credible fear, he was placed into removal proceedings and then paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). Pet., Dkt. 1 at ¶¶ 2, 27; Shanahan Decl., Dkt. 8 at ¶¶ 9–10. Petitioner has an ongoing asylum case. Pet., Dkt. 1 at ¶ 28; *see* Shanahan Decl., Dkt. 8 at ¶ 22.

In early July, Petitioner was arrested by the New York City Police Department and charged with Intent to Obtain Transportation Without Paying, Obstruction of Government Administration, and Trespassing. Shanahan Decl., Dkt. 8 at ¶ 23. Shortly after, DHS issued a warrant for Petitioner's arrest. *Id.* at ¶ 24; Ex. 7 (Form I-200), Dkt. 9-9. Upon arriving for his scheduled ICE check-in on July 17, 2026, Petitioner was detained by Respondents, and he is currently being held at Delaney Hall.[1] Pet., Dkt. 1 at ¶¶ 3, 12, 30; Shanahan Decl., Dkt. 8 at ¶¶ 25, 27.

Respondents assert that ICE exercised discretion when it detained Petitioner because of (1) his recent arrest and (2) his purported violation of the terms of his parole/Alternative to Detention Program, which included location monitoring via an ankle bracelet. *See* Resp'ts' Mem. of Law in Resp. to Pet., Dkt. 9 ("Resp'ts' Resp.") at 7. Respondents assert that Petitioner violated his parole/Alternative to Detention Program when he missed two biometric check-ins and turned off his ankle monitor three times; Petitioner vehemently disputes those claims.[2] *Id.*; Shanahan Decl., Dkt. 8 at ¶¶ 15–19; Pet'r's Reply Mem. of Law in Supp. of Pet., Dkt. 18 ("Pet'r's Reply") at 1, 9. Petitioner did not receive a bond hearing at which an Immigration

---

[1] The Court understands that Petitioner was arrested inside 4777 Park Avenue in the Bronx, which is an ISAP, or Intensive Supervision Appearance Program, Office. *See* Shanahan Decl., Dkt. 8 at ¶¶ 1, 25.

[2] Petitioner's counsel represents that his understanding, which matches the Court's understanding, is that an ankle monitor does not have an off switch or other means of disconnecting it. *See* Pet'r's Reply at 9, n.3.

Judge conducted an individualized assessment to determine whether he is a danger to the community or a flight risk. Pet., Dkt. 1 at ¶ 34.

**DISCUSSION**

Respondents take the position that Petitioner is subject to detention under 8 U.S.C. § 1225(b)(1)(B)(ii), and, therefore, he is not entitled to a bond hearing or to release on bond. Respondents assert that because Petitioner was released on parole under 8 U.S.C. § 1182(d)(5)(A) for one year and that parole has since expired, detention is now mandatory. In contrast, Petitioner asserts that he is detained subject to 8 U.S.C. § 1226(a), and, as a matter of law, he was entitled to a bond hearing prior to being deprived of his liberty.

The outcome turns on whether Petitioner is detained under § 1225(b)(1)(B)(ii), pertaining to "arriving aliens," or § 1226(a), pertaining to "aliens" more broadly. The Undersigned has recently grappled with similar questions in *Quispe-Sulcaray v. Noem*, 25-CV-9908 (VEC), 2025 WL 3501207 (S.D.N.Y. Dec. 7, 2025), and *Pastuna Pastuna v. Francis*, 26-CV-398 (VEC), 2026 WL 189723 (S.D.N.Y. Jan. 23, 2026), and the Second Circuit dealt with a similar question in *Ricardo Aparecido Barbosa da Cunha v. Joseph E. Freden*, 175 F.4th 61 (2d Cir. 2026). This case bears factual similarities to *Pastuna Pastuna*. In that case, the petitioner was also deemed inadmissible as a non-citizen without valid documentation, also had a credible fear of being returned to his home country, and also had been paroled into the country pursuant to § 1182(d)(5)(A) for one year. In each case, the immigrant's parole had expired by the time he was detained, and both had been physically present in the country for fewer than two years. The Government's "entry fiction," *i.e.*, the argument that Petitioner was still an "arriving alien" when he was recently detained, is just as incorrect now as it was then.

The Government's new argument is equally unavailing. The Government acknowledges Second Circuit law that holds that an immigrant who evaded apprehension at the border is not an "arriving alien," *see Barbosa da Cunha*, 175 F.4th at 96, but argues that an immigrant who was apprehended but later released on parole *is* an "arriving alien" because parole freezes the immigrant's legal status in time. Resp'ts' Resp. at 5 (citing *Leng May Ma v. Barber*, 357 U.S. 185, 189 (1958)); *see also Rana v. Genalo*, 26-CV-849 (JPC), 2026 WL 1863815, at *5–7 (S.D.N.Y. June 29, 2026). Even if the Government had not admitted in its own paperwork that Petitioner is not an "arriving alien," *see* Dec. 2024 Notice to Appear, Dkt. 9-5 at 1 (the box for "arriving alien" is not checked; the box for "alien present in the United States" is checked), its argument would remain unpersuasive. Paroled immigrants who have been interviewed for credible fear, released based on a positive finding, and physically enter the United States do not thereafter become "arriving aliens" for these purposes when the parole period expires. *See also J.H.F. v. Arteta*, 26-CV-4076 (AT), 2026 WL 1724066, at *5–6 (S.D.N.Y. June 14, 2026) (rejecting the same argument by the Government).

As explained in *Pastuna Pastuna*, when Petitioner was released on parole, he was removed from the ambit of expedited removal and the mandatory detention regime established by § 1225(b)(1). 26-CV-398 (VEC), 2026 WL 189723, Jan. 23, 2026, Hr'g Tr., Dkt. 19 at 11–12. The expiration of his parole does not return Petitioner to that world. *Id.* at 12. Any determination of detention at this point — post-parole expiration — must be made under the discretionary framework of § 1226(a). *Id.* (citing *Qasemi v. Francis*, 25-CV-10029 (LJL), 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025) (collecting cases)). As this Court first held in *Quispe-Sulcaray* and as most others have held when faced with this same issue, § 1226(a)

requires the exercise of discretion before detention. *Id.* at 12–13 (citing *Quispe-Sulcaray*, 2025 WL 3501207, at *2; *Qasemi*, 2025 WL 3654098, at *13).

Respondents request that, in lieu of immediately releasing Petitioner, the Court order the Government to provide a bond hearing. Resp'ts' Resp. at 7. The Court is concerned whether doing so will provide genuine relief. *See Romero Perez v. Francis*, 25-CV-8112 (JGK), 2025 WL 3110459 (S.D.N.Y. Nov. 6, 2025) (demonstrating the futility of a bond hearing as, even after Judge Koeltl's order, one Immigration Judge refused to hold a bond hearing on the merits and a second granted bail but then invoked an automatic stay); *see also* Pet., Dkt. 1 at ¶¶ 7, 35 (citing Petitioner's concerns regarding the pattern of pretextual denial of bond to non-citizens).

The Court will, however, grant the Government the opportunity to hold a legitimate bond hearing on the merits. *Singh v. Blanche*, 26-CV-5370 (JMF), 2026 WL 2198833, at *3 (S.D.N.Y. July 30, 2026) (determining that a bond hearing is a "more appropriate" remedy than immediate release); *D.C. v. Noem*, 825 F. Supp. 3d 309, 327 (S.D.N.Y. 2026) (collecting cases) (citing a bond hearing as a sufficient habeas remedy). The Government must hold this hearing immediately. At the hearing, the Immigration Judge must make an individualized determination, and the Government must bear the burden of proof if it is seeking an order that Petitioner be detained. *Quintanilla v. Decker*, 21-CV-417 (GBD), 2021 WL 707062, at *3 (S.D.N.Y. Feb. 22, 2021) (holding that due process requires the Government to bear the burden of proof at a § 1226(a) bond hearing regardless of the length of detention).

Shifting the burden to the Government is justified. *See Mathieu v. Dep't of Homeland Sec.*, 26-CV-4630 (PAE), 2026 WL 1747084, at *4 (S.D.N.Y. June 17, 2026) ("[N]umerous courts in this District have ordered bond hearings, with the burden shifted to the Government.").

The three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), counsels in favor of this outcome. *See Huanga v. Decker*, 599 F. Supp. 3d 131, 140 (S.D.N.Y. 2022) (stepping through the *Mathews* test). The *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 241 U.S. at 335.

The first prong cannot be overstated, as the private interest in question is Petitioner's liberty interest. While longer detentions are an even more pressing private interest, nearly a month's deprivation of one's liberty remains compelling, especially when compared to a non-liberty private interest, like the loss of government benefits.

The second prong is complicated by the factual debate concerning Petitioner's compliance with his parole, where Petitioner and Respondents seem to be operating with different sets of facts. This increases the risk of erroneous deprivation, as does, if Petitioner's allegations are accurate, Respondents' recent pattern of denying bond to non-citizens on arguably pretextual grounds. *See* Pet., Dkt. 1 at ¶¶ 7, 35.

Finally, as to the third prong, preventing danger to the community and ensuring that immigrants appear for immigration proceedings are undeniably important Government interests. Nonetheless, Petitioner was paroled in 2024 after the Government decided that he was neither dangerous nor a flight risk. Unlike in *Huanga*, the Petitioner's alleged intervening crime —

turnstile jumping — does not indicate the Petitioner is dangerous,[3] let alone "extremely dangerous." *See Huanga*, 599 F. Supp. 3d at 145. Petitioner also asserts that he was appearing for a scheduled ICE check-in when he was detained, which would indicate that, even post-turnstile-jumping-arrest, he does not present a flight risk. *See* Pet'r's Decl., Dkt. 18-1 at ¶ 4. These countervailing facts undermine the Government's interests. Further, holding a bond hearing is not administratively taxing, and "the Government 'is generally in a better position than a detained noncitizen to gather and present evidence relevant to the bond determination.'" *Mathieu*, 2026 WL 1747084, at *5 (quoting *Fajardo v. Decker*, 22-CV-3014 (PAE), 2022 WL 17414471, at *3 (S.D.N.Y. Dec. 5, 2022)). On balance, the Court finds that the *Mathews* factors instruct that a hearing in which the Government bears the burden is appropriate.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus at Dkt. 1 is GRANTED. **No later than Thursday, August 20, 2026**, Respondents must provide a bond hearing to Petitioner. Consistent with this decision, at such hearing: (1) the Government must bear the burden of proof to establish by clear and convincing evidence that Petitioner poses a flight risk or danger to the public; (2) even if Respondents make that showing, the Immigration Judge must consider alternatives to detention that will reasonably mitigate any flight risk or danger to the community; and (3) the Immigration Judge, in setting the amount of a bond, must consider Petitioner's ability to pay.[4]

---

[3] According to the Metropolitan Transit Authority, more than 10% of subway riders skipped paying their fare during the second quarter of this year. James Barron, *New York City Gave Students Free Transit Cards. They Have Feedback*, N.Y. Times, Aug. 12, 2026, https://www.nytimes.com/2026/08/12/nyregion/new-york-city-gave-students-free-transit-cards-they-have-feedback.html.

[4] *Zamora v. Almodovar*, 25-CV-8643 (RA), 2026 WL 2076002, at *2 (S.D.N.Y. July 17, 2026) (citing *O.F.C. v. Decker*, 22-CV-2255 (JPC), 2022 WL 4448728, at *10 (S.D.N.Y. Sept. 12, 2022) ("[C]ourts in this District

Respondents are ordered to: (1) file a letter on the docket **no later than Monday, August 17, 2026**, confirming that the bond hearing has been scheduled and stating the date and time when it will occur; (2) furnish this decision to the Immigration Judge meaningfully in advance of the hearing; and (3) file a letter on the docket **no later than Friday, August 21, 2026**, with an update as to the outcome of the bond hearing. Respondents must also promptly order a transcript or recording of the hearing and file it on the docket.

Should Respondents fail to provide such a hearing by this deadline, Respondents shall immediately release Petitioner from detention. The Court retains jurisdiction over this matter to ensure compliance with this decision.

In response to Petitioner's request for attorneys' fees and costs, after the conclusion of the case, counsel for Petitioner may file an application pursuant to 28 U.S.C. § 2412 within the time frame provided by the Local Rules. The Court will determine eligibility at that point.

**SO ORDERED.**

**VALERIE CAPRONI**
**United States District Judge**

**Dated: August 14, 2026**
**New York, New York**

---

overwhelmingly agree that [Immigration Judges] must consider these two factors—alternatives to imprisonment and ability to pay—when determining bond for a detained immigrant.") (collecting cases)).

Board of Immigration Appeals precedents also require that an Immigration Judge consider alternatives to detention and ability to pay bond. *B.S. v. Joyce*, 22-CV-9738 (PKC), 2023 WL 1962808, at *5 (S.D.N.Y. Feb. 13, 2023) (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Matter of Urena*, 25 I. & N. Dec. 140, 142 (BIA 2009)).